**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

LEANN M. N.,                              )
                                          )
              **Plaintiff,**              )
                                          )
v.                                        )          **Case No. 24-CV-405-CDL**
                                          )
FRANK BISIGNANO,[1]                       )
**Commissioner of the**                   )
**Social Security Administration,**       )
                                          )
              **Defendant.**              )

## OPINION AND ORDER

Plaintiff seeks judicial review of a decision of the Commissioner of the Social

Security Administration (Commissioner) denying Social Security disability benefits. The

parties have consented to proceed before a United States Magistrate Judge in accordance

with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court **affirms** the

Commissioner's decision.

### I.     Standard of Review

The Social Security Act (the Act) provides disability insurance benefits to

qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The

Act defines "disability" as an "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be

---

[1]     Effective May 7, 2025, pursuant to Federal Rule of Civil Procedure 25(d), Frank
Bisignano, Commissioner of Social Security, is substituted as Defendant in this action. No
further action need be taken to continue this suit by reason of the last sentence of section
205(g) of the Social Security Act, 42 U.S.C. § 405(g).

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 587 U.S. at 99 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II.    Background and Procedural History

Plaintiff filed a Title II application for disability benefits on October 1, 2021, alleging a disability onset date of May 20, 2019. (R. 14). She was 26 years old on the alleged onset date. *Id*. Plaintiff alleged disability due to a combination of impairments, including schizophrenia, depression, and attention deficit hyperactivity disorder (ADHD). (R. 70). She does not allege that any physical conditions prevent her from working. (R. 45)

Plaintiff completed high school, after which she completed a single college class. (R. 46). She testified that she can read, write, add, subtract, and count change. (*Id*.) She has a driver's learner permit but no driver's license, and she failed a driving test at one time. Her last job was as a department store sales associate, and before that she worked as a restaurant hostess.

Plaintiff testified that she cannot work because she is on a lot of medication, hallucinates things such as "random shadows or weird stuff that aren't there," and "just feel[s] unsafe and unfit to work." (R. 50-51). She has problems with her memory, but she is able to follow a television show "if it's interesting." (R. 52). She has problems getting along with others sometimes, and she has anxiety in crowds. (*Id*.).

She attends therapy every other month, and she takes Haldol, which causes some heartburn. Plaintiff testified that on a typical day, she gets up between 9:00 and 10:30, feeds her pets, talks with her family members, prepares food, and spends time on YouTube and Netflix. (R. 52-53). Plaintiff said that she does not go shopping or regularly attend any group functions such as church. (*Id*. at 53-54).

Plaintiff's application was denied on initial review and on reconsideration. An Administrative Law Judge (ALJ) held a video hearing on January 25, 2023. (R. 38-67). Plaintiff and a vocational expert (VE) provided testimony. *See id*. The ALJ denied benefits in a decision dated February 14, 2023. (R. 11-29). The Appeals Council issued a decision on May 18, 2023 denying Plaintiff's request for review of the ALJ's decision. (R. 5-10). Plaintiff sought and was granted an extension of time to file an appeal (R. 1), and Plaintiff

then filed the Complaint in this Court. (*See* Doc. 2). Accordingly, the Court has jurisdiction

to review the ALJ's February 14, 2023 decision under 42 U.S.C. § 405(g).

### III.     The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a

claimant is disabled and, therefore, entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(i)-

(v). A finding that the claimant is disabled or is not disabled at any step ends the analysis.

*See id.*; *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Williams v.*

*Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). The claimant bears the burden on steps one

through four. *Lax*, 489 F.3d at 1084.

At step one, the ALJ determined that Plaintiff has not engaged in any substantial

gainful activity since the alleged onset date, May 19, 2019. At step two, the ALJ found that

Plaintiff has severe impairments of Major Depressive Disorder, Generalized Anxiety

Disorder, ADHD, Post Traumatic Stress Disorder (PTSD), and Schizophrenia. (R. 16). The

ALJ found Plaintiff's obesity diagnosis is a non-severe impairment. (*Id.*)

At step three, the ALJ considered whether Plaintiff's severe impairments equivalent

to one that is listed in Appendix 1 of the regulation, which the Commissioner

"acknowledges are so severe as to preclude substantial gainful activity." *Williams*, 844

F.2d at 751 (internal quotation and citation omitted); *see* 20 C.F.R. §§ 404.1520(d); 20

C.F.R. Part 404, subpt. P, app'x 1 (Listings). Here, the ALJ found that Plaintiff's

impairments do not meet or equal the criteria for any Listing, specifically noting Listings

under Section 12.00 (mental disorders). The ALJ also discussed the "paragraph B"

criteria—four areas of mental functioning used to determine whether a claimant's mental

impairments functionally equal a Listing. *See* 20 C.F.R. § 404 Subpt. P App'x 1. The ALJ

found that Plaintiff has a moderate limitation in each of the four "paragraph B" domains:

understanding, remembering, and applying information; interacting with others;

concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 17).

Because Plaintiff does not have at least one extreme or two or more marked limitations in

these domains, the ALJ found the paragraph B criteria are not satisfied. (*Id.*).

At step four, the claimant must show that his impairment or combination of

impairments prevents him from performing work he has performed in the past. The ALJ

first determines the claimant's residual functional capacity (RFC) based on all the relevant

medical and other evidence. 20 C.F.R. § 404.1520(e); *see also Winfrey v. Chater*, 92 F.3d

1017, 1023 (10th Cir. 1996). The ALJ next determines the physical and mental demands

of the claimant's past relevant work. *Winfrey*, 92 F.3d at 1023. Finally, the ALJ determines

whether the RFC from phase one allows the claimant to meet the job demands found in

phase two. *Id.*

> Here, the ALJ determined that Plaintiff has the RFC to perform

>> a full range of work at all exertional levels but with the following
>> nonexertional limitations: [Plaintiff] can understand, remember, and
>> carry out simple instructions; can occasionally interact with
>> supervisors and coworkers; can have no interaction with the public;
>> cannot perform work requiring a specific production rate, such as
>> assembly line work or work that requires hourly quotas; and can deal
>> with occasional changes in work processes and environments.

(R. 18). The ALJ did not make a finding about Plaintiff's capacity to perform past relevant

work, noting that "[a]t the hearing, [Plaintiff] was uncertain about details of her prior

employment." (R. 24). However, the ALJ determined such a finding was not material,

noting that "all potentially applicable Medical-Vocational Guidelines would direct a finding of 'not disabled' given the individual's age, education, and [RFC]." (*Id.*).

At step five, citing the VE's testimony, the ALJ found that the plaintiff can perform alternative jobs existing in significant numbers in the national economy, including (1) **dishwasher, kitchen helper**, Dictionary of Occupational Titles (DOT) # 318.687-010, medium exertion, specific vocational preparation (SVP) Level 2, with 102,000 such jobs in the national economy; (2) **price marker/ticketer**, DOT # 209.587-034, light exertion, SVP Level 2, with 136,000 positions in the national economy; and (3) **housekeeper**, DOT # 323.687-014, light exertion, SVP Level 2, with 178,000 such jobs available in the national economy. (R. 25). As such, the ALJ found the plaintiff not disabled at step five. (*Id.*).

## IV.    Discussion

Plaintiff argues first that the ALJ's RFC determination and explanation did not adequately address certain prior administrative findings and thus failed to comply with Social Security Ruling ("SSR") 96-8p. The ALJ's written decision "must include a narrative discussion describing how the evidence supports each conclusion" as to the claimant's work-related limitations. SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).[2] The ALJ must support the limitations included in the RFC determination with citations to "specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily

---

[2]    A claimant's RFC is her "*maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis," despite her medical impairments and symptoms. *Id*. at *2 (emphases in original).

activities, observations)." *Id.* Additionally, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence" of record were considered and resolved. *Id.*

Here, the ALJ addressed the prior administrative findings of state agency psychological consultants Stephanie Crall, Ph.D. on initial review, and Lisa Swisher, Ph.D. on reconsideration. The ALJ's decision accurately related both reviewers' RFC findings. First, the ALJ noted Dr. Crall's opinion that Plaintiff retains the RFC to perform simple tasks with routine supervision; focus for two-hour periods with routine breaks and pace and persist for an eight-hour workday and 40-hour work week despite psychological symptoms; relate to supervisors and peers on a superficial work basis; and adapt to a work environment with some changes to the environment, but that Plaintiff could not relate to the general public. (R. 21-22; 74-75). The ALJ found Dr. Crall's RFC finding "somewhat persuasive," noting that Dr. Crall's opinion is "well supported by [her] narrative and is consistent with the earlier evidence of record, including mental status examinations contained in treatment records." (R. 23). The ALJ noted that she interpreted Dr. Crall's finding of "superficial contact with coworkers and supervisors" as "occasional contact." (*Id.*).

Dr. Swisher opined that Plaintiff retains the mental RFC to understand, recall and perform simple and repetitive tasks; focus for two-hour periods with routine breaks and pace and persist for 8 hour work day and 40 hour work week despite psychological symptoms; interact on a superficial level with supervisors and coworkers; and adapt to a work setting and some changes in the work setting with forewarning, but that Plaintiff is unable to interact appropriately or tolerate contact with the public. (R. 84). The ALJ found

7

this opinion "persuasive, but a little less so than Dr. Crall's opinion," and described several aspects of Dr. Swisher's opinion that she found not fully consistent with other evidence. Among other issues, the ALJ found Dr. Swisher's "opinion that [Plaintiff] can perform repetitive tasks . . . not well defined," and the ALJ determined that the RFC should further exclude "work requiring a specific production rate, such as assembly line work or work that requires hourly quotas," due to Plaintiff's "concentration issues." (R. 23).

Plaintiff does not dispute that the ALJ's discussion of the prior administrative findings met the applicable technical requirements. *See* 20 C.F.R. § 404.1520c(b)(2) (identifying factors an ALJ must consider and/or articulate in connection with prior administrative findings). In reviewing the ALJ's decision, the Court is satisfied that the decision complies with § 1520c in addressing Drs. Crall and Swisher's findings. The decision explained the weight the ALJ accorded to each of their findings, with reference to whether the findings are supported in the reviewers' own reports and whether they are consistent with other evidence in the record. (*See* R. 23-24).

The ALJ's decision further detailed evidence supporting the RFC determination, noting that Plaintiff was able to work prior to the alleged onset date, even though most of Plaintiff's diagnosed conditions were present before her alleged onset date. After a review of the Plaintiff's relevant medical records, the ALJ explained that,

> although the evidence documents a period of inpatient hospitalization in 2021, records prior to that time indicate the claimant was doing well. Moreover, records that follow the 2021 hospitalization demonstrate improvement with treatment. In fact, as discussed above, more recent treatment records only identified one diagnosis, which was described as being "in partial remission" within 12 months of her hospitalization.

(R. 22). The ALJ's decision explained the RFC determination with reference to specific medical evidence as well as nonmedical evidence, including Plaintiff's own reports that "medication greatly helped her function and focus at work, home, and school"; during the relevant period, she "generally demonstrated intact short-term and long-term memory as well as adequate concentration and attention span," and she "testified she could concentrate on something if it was a subject that interested her, and in a function report she noted she finished what she started and could follow written and spoken instructions 'okay.'" (*Id*.); *see* SSR 96-8p, 1996 WL 374184, at *7.

Nonetheless, Plaintiff argues that the ALJ's decision did not adequately account for certain detailed findings in Section I of the state agency consultants' mental RFC assessment forms. Both Dr. Crall and Dr. Swisher indicated that Plaintiff has a "marked" limitation in understanding, remembering, and carrying out detailed instructions. (R. 73-74, 83-84). Plaintiff objects that the ALJ's decision did not explicitly discuss these findings or incorporate a specific restriction on detailed instructions in the RFC determination.

However, under the applicable regulations, ALJ had no separate duty to articulate how she considered each of the state agency consultants' detailed Section I findings. Here, as noted above, the ALJ's decision adequately articulated the ALJ's consideration of Dr. Crall and Dr. Swisher's findings. The RFC findings of Dr. Crall and Dr. Swisher incorporated their more detailed assessment of Plaintiff's functional limitations, including the finding of marked limitations in dealing with detailed instructions. As the Commissioner's guidelines explain, the Section I findings are "merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of

documentation and do[] not constitute the RFC assessment." Program Operations Manual

System ("POMS") DI § 24510.060B.2. *See Nelson v. Colvin*, 655 F. App'x 626, 628-

29 (10th Cir. 2016) (explaining that "[i]t is the narrative written by the . . . psychologist in

section III that adjudicators are to use as the assessment of RFC," and affirming where state

agency consultant's "Section III narrative adequately captured the limitations she found in

Section I"). Thus, there was no conflict requiring further explanation between the state

agency consultants' Section I findings regarding detailed instructions and the ALJ's RFC

determination.[3]

Plaintiff next argues that, at step five, the ALJ relied on testimony by the VE that

conflicts with information in the DOT without adequately addressing the conflict. She

contends that the RFC limitation to understanding, remembering, and carrying out simple

instructions is inconsistent with the jobs designated as GED Reasoning Level 2. (R. 26).

Specifically, she contends that a requirement to "carry out detailed but uninvolved written

---

[3]     Plaintiff also contends that the ALJ improperly construed a limitation to "superficial" interaction with coworkers and supervisors as "occasional" contact. (*See* Doc. 11 at 13-14). However, "exact correspondence between a medical opinion and the mental RFC is not required." *Wells*, 727 F.3d at 1071 (citing *Chapo v. Astrue,* 682 F.3d 1285, 1288 (10th Cir. 2012). Additionally, the ALJ's decision cogently explained why she adopted the "superficial" interaction limitation. For example, the ALJ noted a treating nurse's opinion that Plaintiff "did not present any significant limitations related to her ability to perform and maintain a simple job"; had no significant limitations in sustaining concentration and persistence "with the exception of moderate impairment in the ability to work incoordination with or proximity to others without being distracted by them." (R. 21). The ALJ further explained that, "[a]lthough the evidence documents some difficulty interacting with treatment providers during her hospitalization, mental status examinations from outpatient providers have generally described [Plaintiff] as cooperative with normal speech." (R. 22).

instructions," as required for Level 2 reasoning, exceeds the RFC limitation to simple, routine tasks, and therefore created a conflict in the VE's testimony that the ALJ improperly failed to resolve. *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) (the ALJ must "investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony"); *see also* SSR 00-04p, 2000 WL 1898704.

However, Tenth Circuit guidance indicates that a limitation to simple, routine work or instructions does not necessarily preclude work requiring Level 2 reasoning. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (holding that Level 2 reasoning "appears more consistent with" an RFC for "simple and routine work tasks"); *see also Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (unpublished) (rejecting argument that limitation to "simple, repetitive and routine work" is inconsistent with Level 2 reasoning); *Ray v. Comm'r of Soc. Sec.*, No. CIV-18-629-SM, 2019 WL 1474007, at *5 (W.D. Okla. Apr. 3, 2019) (unpublished) (finding that Level 2 reasoning does not, "on its face," conflict with an RFC limitation to simple work-related instructions and tasks; collecting cases); *cf. Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016) (unpublished) (citing Eighth Circuit holding that "a limitation to simple instructions is inconsistent with both level-two and level-three reasoning," but noting that Tenth Circuit has not ruled "whether a limitation to simple and routine work tasks is analogous to a limitation to carrying out simple instructions").

Moreover, this court has rejected the argument that a state agency consultant's finding of a marked limitation in carrying out detailed instructions precludes a claimant's ability to perform Level 2 reasoning jobs. *See Rainwater v. Colvin*, No. 15-CV-491-GKF-

FHM, 2016 WL 11468941, at *2 (N.D. Okla. Sept. 21, 2016), *report and recommendation*

*adopted*, No. 15-CV-491-GKF-FHM, 2016 WL 6561298 (N.D. Okla. Nov. 4, 2016). In

*Rainwater*, the court explained,

> The designation that a job involves carrying out detailed, but uninvolved instructions indicates that every step of the process is defined, but that the process is fairly simple, i.e. uninvolved. Although the DDS doctors and the DOT both employ the word "detailed," reasoning level 2 jobs are not inconsistent with

either a marked limitation in carrying out detailed instructions, or with an RFC limited to

simple instructions. *Id*. Accordingly, there was no apparent conflict between the DOT and

the VE's testimony identifying jobs with up to GED Level 2 reasoning, and the ALJ was

not required to investigate this aspect of the VE's testimony further.

Plaintiff argues that the job of price marker/ticketer is incompatible with the RFC

determination that she "cannot perform work requiring a specific production rate, such as

assembly line work or work that requires hourly quotas." (R. 18). The DOT identifies the

job of price marker/ticketer as requiring a temperament of "T: Attaining precise set limits,

TOLERANCES, and standards." *See* DOT 209.587-034, 1991 WL 671802 (price

marker/ticketer). Plaintiff argues that courts have interpreted this language "as barring fast-

paced or production-quota work." However, the cases cited are inapposite. *See Sara A. v.*

*Saul*, No. 3:19CV144, 2019 WL 6606861 (N.D. Ind. Dec. 5, 2019) (holding that ALJ's

RFC determination limited to simple, routine, and repetitive tasks with no hourly quotas

"fail[ed] to accommodate Plaintiff's limitations," where "a substantial body of evidence

document[ed] Plaintiff's deficits in concentration, persistence or pace . . . . [and] the record

demonstrate[d] poor concentration; organizational difficulties; slowed processing speed;

sustained attention problems; significant distractibility; and decreased attention span"); *Sandra H. v. Comm'r of Soc. Sec.*, No. 2:17-CV-403-FVS, 2019 WL 289811 (E.D. Wash. Jan. 22, 2019) (finding "no error in the ALJ's determination at step five that the VE's testimony was consistent with the . . . DOT"; assuming without deciding that small products assembler job conflicted with restriction of "fast-paced or strict production quota style" work, the ALJ had identified other jobs existing in significant numbers that claimant could perform). Plaintiff has not identified a conflict in the VE's testimony in this regard.

Plaintiff argues that the job of housekeeper requires social interaction capacities that exceed her RFC. First, she notes that a housekeeper is required to act under specific instructions and contends that "using common sense, this job, then, would involve more than occasional interaction with supervisors as limited by the ALJ's RFC." (Doc. 11 at 11). She also contends that the housekeeper job requires assisting patrons, which requires interacting with the public. However, the DOT assigns the housekeeper job a "people rating" of 8, which represents "the lowest possible level of human interaction that exists in the labor force." *Lane v. Colvin*, 643 F. App'x 766, 770 (10th Cir. 2016). This rating describes the need to take instructions as only "[a]ttending to the work assignment instructions or orders of supervisor" with "[n]o immediate response required unless clarification of instructions or orders is needed." *DOT*, App. B—Explanation of Data, People, & Things, 1991 WL 688701. This DOT description also specifies that "Taking-Instructions-Helping" is "Not Significant" and talking is "Not Present" for this job. DOT 323.687-014, 1991 WL 672783. Thus, Plaintiff has not identified reversible error as to the housekeeper job.

## V.    Conclusion

For the reasons set forth above, the Court finds the ALJ's conclusion is legally sound and supported by substantial evidence. Therefore, the decision of the Commissioner finding the plaintiff not disabled for the relevant period is **affirmed**.

ORDERED this 30th day of September, 2025.


Christine D. Little
United States Magistrate Judge